**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------- x

**DARREN CESARIO,** on behalf of himself and all others similarly situated,

Plaintiff,

v.

**DAVIDsTEA (USA) INC., and DAVIDsTEA Inc.**

Defendants.

---------------------------------------------------------------- x

Docket No. ________

CLASS ACTION COMPLAINT & DEMAND FOR JURY TRIAL

Plaintiff, DARREN CESARIO ("Plaintiff" or "Mr. Cesario"), on behalf of himself and all others similarly situated (collectively, "Plaintiffs"), by and through his undersigned counsel, Robert L. Schonfeld, Esq., of Joseph & Norinsberg, LLC, as and for his putative class action complaint upon Defendants, DAVIDsTEA (USA) Inc., and DavidsTea Inc. (collectively, "DavidsTea" or "Defendants"), hereby alleges as follows:

## INTRODUCTION

1. Plaintiff Darren Cesario, a resident of New York County, is a visually-impaired and legally blind person who requires screen-reading software to read website content while using a computer or mobile device. As documented in a May 15, 2025, medical evaluation by Dr. Eleonora Orloff, OD, Attending Ophthalmologist at Bronx Eye Associates, Mr. Cesario has been diagnosed with Retinitis Pigmentosa ("RP"), a progressive hereditary retinal dystrophy characterized by degeneration of the photoreceptor cells, including rods and cones. His most recent examination demonstrates a severely constricted visual field, with markedly reduced peripheral vision (tunnel vision), impaired night vision (nyctalopia), and decreased contrast sensitivity, meeting federal and New York State criteria for legal blindness. (**Ex. A** – *Medical Documentation of Legal Blindness,* Darren Cesario, dated May 15, 2025.)

2. Because of this permanent and progressive vision loss, Mr. Cesario relies on screen-reading software, including NonVisual Desktop Access ("NVDA"), together with keyboard navigation and low-vision aids, to navigate websites, read product information, and complete online transactions. When a website is properly coded, NVDA can identify product images, read labels, announce interactive controls, and allow blind consumers to shop independently. When a website is not properly coded, NVDA cannot interpret essential content, rendering the site inaccessible and unusable for blind users.

3. Defendants **DAVIDsTEA (USA) INC.** and **DAVIDsTEA Inc.** own, operate, and control the commercial retail website www.davidstea.com (the "Website"). DavidsTea is a well-known specialty tea retailer that sells loose-leaf teas, prepacked teas, tea accessories, and related consumer products to customers throughout the United States, including New York, via its interactive e-commerce platform.

4. The Website functions as a primary sales and information portal, offering consumers the ability to browse teas, compare blends, read product descriptions, review customer feedback, and purchase items for home consumption. For blind consumers like Mr. Cesario—who cannot visually inspect product packaging, read labels, or safely navigate retail stores—DavidsTea's written product descriptions, specifications, and guidance are especially critical to making informed purchasing decisions.

5. Plaintiff visited the Website www.davidstea.com on multiple dates, including **August 2026 and September 2026**, with the specific intent to research and purchase various DavidsTea products, including **Organic Moroccan Mint Oolong Tea**, **Apple Cider Tea**, and **Organic Immunity SOS Tea**. These products are marketed and sold directly to U.S. consumers through the Website.

6. During each visit, Plaintiff encountered recurring, independently verifiable

accessibility barriers**,** including:

- **missing alternative text for critical product images,** (e.g., product front views, detail views, and promotional graphics)
- **unlabeled or ambiguously labeled buttons and controls,** including “Add to Bag” and interactive review controls
- **Broken ARIA references,** causing NVDA to announce incomplete or meaningless labels for interactive elements
- **Multiple form labels** and **redundant links**, creating confusion and repetitive announcements for screen-reader users
- **Skipped heading levels** and **empty headings**, disrupting logical navigation and preventing efficient movement through page sections
- **Very low contrast text**, making content unreadable for low-vision users and violating WCAG contrast requirements.

These barriers prevented Plaintiff from determining product characteristics, understanding interactive controls, navigating review sections, and confidently adding desired products to his cart.

7. Accessibility testing of the relevant DavidsTea pages—using the **WAVE Web Accessibility Evaluation Tool**—revealed systemic barriers across multiple product pages, including **11–13 errors**, **5–7 contrast errors**, and **13–14 alerts** per page. The WAVE reports confirm widespread failures such as missing alternative text, empty buttons, broken ARIA references, redundant links, skipped headings, and device-dependent event handlers. Plaintiff’s own experience navigating the Website with NVDA mirrors these findings: key product images are announced only as “graphic,” primary purchase controls are exposed only as “button” without meaningful labels, and review sections contain unlabeled interactive elements that NVDA cannot

interpret. Exhibit B.

8. Collectively, these barriers demonstrate that Defendants have failed to take reasonable steps to ensure the Website complies with **WCAG 2.1 AA** standards and remains accessible to blind and visually-impaired consumers. As a result, Plaintiff was denied equal access to the goods and services offered by Defendants, including the ability to independently research and purchase his desired DavidsTea products. Defendants' denial of full and equal access to the Website—and therefore their denial of the goods, services, and opportunities offered thereby—constitutes ongoing violations of Plaintiff's rights under the **Americans with Disabilities Act ("ADA")**, the **New York State Human Rights Law ("NYSHRL")**, the **New York City Human Rights Law ("NYCHRL")**, and the **New York Civil Rights Law ("NYCRL")**.

## JURISDICTION AND VENUE

8. This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1331 and 42 U.S.C. § 12188, as Plaintiff alleges violations of Title III of the ADA, 42 U.S.C. § 12181 et seq., a federal civil rights statute.

9. This Court has supplemental jurisdiction under 28 U.S.C. § 1367 over Plaintiff's claims under the NYSHRL, NYCHRL, and NYCRL because they form part of the same case or controversy as Plaintiff's federal ADA claim.

10. Venue is proper in the Southern District of New York pursuant to 28 U.S.C. §§ 1391(b) and (c) because Plaintiff resides in Bronx County, New York, within this District, accessed and attempted to use the Website from his residence in this District on multiple occasions, and suffered injury here. A substantial part of the discriminatory conduct giving rise to this action—including the denial of equal access to Defendants' online goods, services, and digital content—occurred within this District.

11. Jurisdiction and venue are further proper in this District because Defendants conduct

substantial and continuous business within this District through the Website. The Website serves as a digital gateway to Defendants' nationwide retail operations, inviting users—including those residing in New York—to browse products, compare features, review specifications, and complete purchases online. Defendants' repeated transmission of digital content and e-commerce services to residents of this District constitutes purposeful availment sufficient to support personal jurisdiction. See *Reed v. 1-800-Flowers.com, Inc.*, 327 F. Supp. 3d 539 (E.D.N.Y. 2018); *Andrews v. Blick Art Materials, LLC*, 286 F. Supp. 3d 365 (E.D.N.Y. 2017); *Ford Motor Co. v. Mont. Eighth Judicial Dist. Court*, 592 U.S. ___ (2021); *South Dakota v. Wayfair, Inc.*, 585 U.S. ___ (2018); *Godfried v. Ford Motor Co.*, 2021 U.S. Dist. LEXIS 87012 (D. Me. May 6, 2021); *Romero v. 88 Acres Foods, Inc.*, 2022 U.S. Dist. LEXIS 9040 (S.D.N.Y. Jan. 18, 2022); *Sanchez v. NutCo, Inc.*, 2022 U.S. Dist. LEXIS 51247 (S.D.N.Y. Mar. 22, 2022); *Panarra v. HTC Corp.*, No. 6:20-cv-6991 (W.D.N.Y. Apr. 15, 2022).

## THE PARTIES

12. Plaintiff **Darren Cesario** is legally blind and visually impaired, qualifying as an individual with a disability under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12102(1)–(2), its implementing regulations at 28 C.F.R. §§ 36.101 et seq., and the New York City Human Rights Law ("NYCHRL"). Mr. Cesario has been diagnosed with **Retinitis Pigmentosa**, a progressive hereditary retinal dystrophy that causes degeneration of the photoreceptor cells and results in severely constricted visual fields, impaired night vision, and decreased contrast sensitivity, consistent with advanced RP and legal blindness. (Ex. A.) Because Retinitis Pigmentosa is chronic, incurable, and progressive, Mr. Cesario's visual limitations are permanent and significantly impair his ability to perform daily tasks, navigate unfamiliar environments, and visually interpret printed or digital information without assistive technology.

13. Mr. Cesario relies on screen-reading software such as NVDA, together with

keyboard navigation and low-vision aids, to independently access websites and online retail platforms. He depends on properly coded websites to shop independently, evaluate products, and access online information on equal terms with sighted consumers.

14. Plaintiff regularly purchases consumer goods online and relies heavily on accessible e-commerce websites to obtain products for daily use, including specialty teas, wellness blends, and household consumables. Because he cannot visually inspect product packaging, read printed labels, or safely navigate retail stores, he depends on accurate digital product descriptions, accessible navigation structures, and properly labeled interactive controls to make informed purchasing decisions.

**DAVIDsTEA (USA) INC.**

15. Upon information and belief, Defendant **DAVIDsTEA (USA) INC.** is a corporation organized and existing under the laws of the State of New York, with a principal U.S. business address at **275 Bleecker Street, New York, NY 10014**. DAVIDsTEA (USA) INC. operates as the United States arm of the DavidsTea brand and derives substantial revenue from sales to consumers in New York through its interactive retail website, www.davidstea.com.

**DAVIDsTEA Inc.**

16. Upon information and belief, Defendant **DAVIDsTEA Inc.** is a Canadian corporation headquartered in **Montreal, Quebec**, and is the parent company of DAVIDsTEA (USA) INC. DAVIDsTEA Inc. owns the "DAVIDsTEA" brand, holds intellectual property associated with the Website, and is responsible for the design, development, content, and digital operation of www.davidstea.com, including its U.S. e-commerce functionality.

**Joint Operation**

17. According to DavidsTea's published Website materials, corporate filings, and Terms

of Use, both DAVIDsTEA (USA) INC. and DAVIDsTEA Inc. participate in and share responsibility for the Website's operation, content, and services. Neither entity is merely a d/b/a of the other; rather, each claims a distinct legal role in the Website's ownership, administration, and commercial activity. Together, they jointly operate the Website as a unified retail platform offering goods and services to consumers throughout the United States, including New York.

## NATURE OF ACTION

18. This action arises under Title III of the ADA, 42 U.S.C. § 12181 et seq., challenging Defendants' operation of a public-facing Website that denies blind and visually impaired individuals full and equal access.

19. DavidsTea is a "sales establishment" and "service establishment" within the meaning of 42 U.S.C. § 12181(7), and the Website is a service, privilege, and advantage of that public accommodation. Courts in this Circuit have repeatedly held that commercial websites offering goods for sale to the public fall within Title III's scope. Defendants' Website functions as a place of public accommodation and/or as a service, privilege, or advantage of a place of public accommodation within the meaning of the ADA and New York law. At all relevant times, Defendants maintained control over the design, coding, and digital infrastructure of the Website and were responsible for ensuring its compliance with applicable accessibility standards, including WCAG 2.1 Level AA.

20. Although the Website allows consumers to browse and purchase teas, compare blends, read product descriptions, and access detailed customer reviews, it lacks meaningful alternative text, accessible form labels, properly identified buttons, logical heading structure, and adequate semantic markup across key interactive features. These deficiencies render the Website inaccessible to blind users and deny them meaningful participation in Defendants' digital marketplace.

21. As a direct result of these deficiencies, Plaintiff and similarly situated blind

consumers are unable to independently access the Website's content and transactional features on equal terms with sighted users, in violation of the ADA and New York law.

22. The Internet has become a vital source of information and a primary tool for conducting everyday activities such as shopping, researching products, comparing features, communicating with businesses, and obtaining goods and services. For blind and visually impaired individuals, accessible websites are not a luxury — they are essential for equal participation in modern commerce.

23. Blind and visually impaired individuals access websites using screen-reading software and keyboard navigation. Screen-reading software translates digital text and properly coded webpage elements into speech or refreshable Braille. To function, the underlying website code must expose meaningful text equivalents for images, labels for buttons and form fields, programmatically associated table headers, logical heading structure, and predictable keyboard focus order.

24. Users of Windows-enabled computers rely primarily on two screen-reading programs: **JAWS** and **NVDA**. These tools are indispensable for blind users and, as a practical matter, represent the only means by which they can independently navigate the Internet, read product information, and complete online purchases.

25. For screen-reading software to function, website content must be capable of being rendered into meaningful text. Common accessibility failures include missing text equivalents for non-text elements, unlabeled buttons and form fields, inaccessible tables, broken ARIA references, empty links, empty headings, poor keyboard focus order, and other coding defects that prevent screen-reading software from accurately conveying the purpose and content of a webpage.

26. These barriers are not subjective. Screen-reading software behaves in predictable, repeatable ways when encountering inaccessible code. For example, when an image lacks alternative

text, NVDA will announce only "graphic." When a button lacks an accessible name, NVDA will announce only "button." When table headers are not programmatically associated with data cells, NVDA will read isolated numbers without context. These failures are technical, measurable, and independently verifiable.

27. The World Wide Web Consortium ("W3C") has published the **Web Content Accessibility Guidelines ("WCAG")**, including WCAG 2.0 and WCAG 2.1, which establish internationally recognized standards for digital accessibility. WCAG is widely adopted by private businesses, government agencies, accessibility consultants, and courts as the appropriate benchmark for determining whether digital content is accessible to blind and visually impaired users.

28. For more than two decades, the U.S. Department of Justice ("DOJ") has consistently taken the position that Title III of the ADA applies to websites and requires businesses to ensure that their online goods and services are accessible to individuals with disabilities. DOJ guidance, settlement agreements, and enforcement actions repeatedly reference WCAG as the appropriate technical standard for compliance.

29. Accessible website design is neither novel nor burdensome. WCAG-compliant coding practices are widely known, widely implemented, and readily achievable using standard development tools. Numerous retailers of comparable size maintain accessible websites. Defendants' failure to do so is the result of inattention, not technical impossibility.

30. When a business chooses to operate a commercial website as a primary channel for product information and sales, it must ensure that blind consumers can access the same information and complete the same transactions as sighted consumers. When accessibility barriers prevent blind users from researching products, comparing features, or completing purchases, the business has denied them full and equal enjoyment of its goods and services in violation of the ADA.

## STATEMENT OF FACTS

27. In 2026, Mr. Cesario became interested in purchasing specific teas from DavidsTea, including **Organic Moroccan Mint Oolong Tea**, **Apple Cider Tea**, and **Organic Immunity SOS Tea**, all of which are marketed and sold directly to U.S. consumers through Defendants' Website, **www.davidstea.com**.

28. Plaintiff selected DavidsTea because of its reputation as a specialty retailer of loose-leaf teas and wellness blends, and because the Website offers detailed product descriptions, tasting notes, preparation guidance, customer reviews, and category pages devoted to tea varieties. For a blind consumer who cannot visually inspect product packaging or read printed labels in-store, these detailed written materials are especially important.

29. On **August 22, 2026**, Plaintiff used his Windows desktop computer running NVDA, together with keyboard navigation, to access www.davidstea.com with the specific intent to evaluate and, if appropriate, purchase **Organic Moroccan Mint Oolong Tea**.

30. After reaching the Website, Plaintiff used the search and navigation controls to locate the **Organic Moroccan Mint Oolong Tea** product page. He intended to review the tea's tasting notes, caffeine level, preparation instructions, customer reviews, and purchase controls in order to determine whether the product was suitable for his needs.

31. When Plaintiff landed on the page, NVDA announced multiple key product images only as "graphic," without descriptive alternative text. Because those images lacked accessible text equivalents, Plaintiff could not determine important characteristics of the product, including packaging type, quantity, or whether the product was loose-leaf or bagged.

32. Plaintiff next attempted to access the sections of the page providing product highlights and detailed descriptions. NVDA either skipped those sections or announced them as unlabeled regions and headings, making it difficult to understand the content in a logical sequence.

33. Plaintiff then attempted to reach the preparation section to confirm steeping instructions, temperature, and recommended serving size. NVDA read isolated numbers and units without consistently announcing their associated labels, because the page did not properly programmatically associate table headers with data cells. As a result, Plaintiff could not reliably determine which values corresponded to which preparation steps.

34. Plaintiff then navigated to the area of the page where DavidsTea displays price and purchase controls. NVDA identified at least one primary control only as "button," without a meaningful accessible name indicating whether the control would add the tea to the cart or perform some other function. Because the control was unlabeled, Plaintiff could not confidently initiate a purchase.

35. Every time Plaintiff attempted to return to the main product content using heading and landmark navigation, NVDA repeatedly forced him through site-wide navigation and promotional content. The combination of unlabeled images, fragmented preparation instructions, and unlabeled purchase controls prevented Plaintiff from meaningfully evaluating or purchasing the tea, and he was forced to abandon his attempt.

36. On **September 3, 2026**, Plaintiff returned to the Website from his home, again using NVDA and keyboard navigation, with a renewed intent to complete his research and purchase **Organic Moroccan Mint Oolong Tea**, **Apple Cider Tea**, or **Organic Immunity SOS Tea**.

37. During that visit, Plaintiff again encountered inaccessible preparation information on the product pages. NVDA read measurements and values without clearly identifying whether they referred to steeping time, temperature, serving size, or other characteristics. Plaintiff could not confidently determine whether the teas could be prepared properly.

38. Plaintiff also attempted to access product-detail tabs or controls associated with reviews, additional information, or related sections. NVDA announced those controls only as

"button," without accessible names such as "Details," "Reviews," or "Q&A," preventing Plaintiff from knowing which control would reveal which content.

39. After his second unsuccessful attempt, Plaintiff navigated to DavidsTea's category pages for herbal teas, oolong teas, and wellness blends to compare alternative products. There, NVDA encountered numerous product tiles and graphical elements that lacked meaningful labels, making it difficult for Plaintiff to distinguish one tea from another or identify what product each tile represented.

40. During the same session, Plaintiff also used DavidsTea's "They Go Together" and "Bundles" sections to search for curated tea sets. The listing pages presented incomplete or non-sequential text to NVDA, and some comparison or selection controls were exposed as unlabeled buttons, preventing Plaintiff from reliably identifying and comparing suitable products.

41. Plaintiff ended the September 3, 2026 visit unable to verify the preparation instructions, tasting notes, ingredients, or purchase controls associated with the products he sought. He again left the Website without completing a purchase because the pages he needed were not coded to work with his screen-reader.

42. On **September 9, 2026**, Plaintiff made a third attempt to use Defendants' Website, again from his home and again using NVDA and keyboard navigation. He still intended to obtain one or more teas from DavidsTea—specifically **Organic Moroccan Mint Oolong Tea**, **Apple Cider Tea**, or **Organic Immunity SOS Tea**—because of DavidsTea's reputation and the Website's detailed product coverage.

43. During this September 9, 2026, visit, Plaintiff encountered the same barriers he had previously faced: key product images remained unlabeled, preparation tables remained fragmented and confusing when read by NVDA, and purchase controls still lacked meaningful accessible names. Plaintiff was again unable to independently evaluate or purchase the products he sought.

44. Around this time, Plaintiff obtained and reviewed automated **WAVE accessibility reports** for DavidsTea pages associated with **Organic Moroccan Mint Oolong Tea**, **Apple Cider Tea**, and **Organic Immunity SOS Tea**. Those reports identified numerous accessibility problems, including missing alternative text, unlabeled form controls, empty buttons, broken ARIA references, skipped headings, redundant links, and very low contrast text. These technical findings align with Plaintiff's first-hand experience using NVDA on the same pages.

45. As a direct result of these barriers, Plaintiff was denied the ability to independently browse products, compare specifications, review descriptive content, operate the Website's purchase controls, and complete an online transaction. The exclusion he experienced was real, repeatable, and directly caused by Defendants' failure to implement industry-standard accessibility practices.

46. Plaintiff's interest in DavidsTea is concrete and ongoing. Because his Retinitis Pigmentosa causes tunnel vision, impaired night vision, and decreased contrast sensitivity, he cannot rely on visual inspection of products in conventional retail environments and instead depends heavily on accessible e-commerce platforms to evaluate and purchase teas and wellness blends.

47. Plaintiff remains highly interested in purchasing **Organic Moroccan Mint Oolong Tea**, **Apple Cider Tea**, **Organic Immunity SOS Tea**, or similar products through DavidsTea's platform. He intends to revisit the Website upon its remediation so that he may independently access the information, compare products, and complete a transaction on equal terms with sighted consumers.

48. Plaintiff has standing to seek injunctive relief because he personally encountered access barriers on the Website on multiple occasions while attempting to research and purchase specific products.

49. Plaintiff's past visits were genuine and purposeful. They were tied to particular products, particular pages, and a concrete intent to make a purchase, not to a generalized desire to

monitor ADA compliance.

50. The discriminatory conditions are ongoing because Plaintiff encountered substantially the same accessibility barriers across multiple visits separated in time, and the Website continues to market and sell the same categories of products through the same inaccessible interfaces.

51. Plaintiff's intent to return is real and imminent. He still seeks to purchase teas through DavidsTea's Website, prefers DavidsTea because of its specialized product coverage and detailed descriptions, and intends to return to the same product and category pages once they are made accessible.

52. Plaintiff's allegations are concrete, particularized, and sufficient to satisfy Article III standing requirements under controlling Second Circuit law, including ***Calcano v. Swarovski N. Am. Ltd***., 36 F.4th 68 (2d Cir. 2022), and ***Harty v. W. Point Realty, Inc.***, 28 F.4th 435 (2d Cir. 2022).

## CLASS ACTION ALLEGATIONS

53. Plaintiff brings this action pursuant to Rules 23(a), 23(b)(2), and, alternatively, 23(b)(3) of the Federal Rules of Civil Procedure on behalf of himself and a proposed nationwide class defined as:

> All legally blind individuals in the United States who, during the applicable limitations period, attempted to access and use www.davidstea.com and were denied full and equal enjoyment of its goods, services, privileges, advantages, or accommodations because of accessibility barriers.

54. Plaintiff also seeks certification of a New York subclass defined as:

All legally blind individuals residing in New York who, during the applicable limitations period, attempted to access and use www.davidstea.com and were denied full and equal enjoyment of its goods, services, privileges, advantages, or accommodations because of the same accessibility barriers.

55. Numerosity is satisfied because, upon information and belief, the proposed class and subclass consist of numerous blind and visually impaired consumers dispersed throughout the United States and New York, making joinder impracticable.

56. Common questions of law and fact predominate, including but not limited to whether Defendants jointly own, operate, control, or maintain the Website; whether the Website contains barriers that deny blind users full and equal access; whether Defendants failed to provide reasonable modifications or appropriate auxiliary aids and services; and whether injunctive and declaratory relief should issue requiring remediation of the Website.

57. Plaintiff's claims are typical of those of the proposed class and subclass because he, like all class members, is blind, relies on screen-reading technology, attempted to use the Website, and encountered barriers that interfered with equal access.

58. Plaintiff will fairly and adequately protect the interests of the class. He has no interests antagonistic to the interests of absent class members and has retained counsel experienced in disability-rights and complex litigation.

59. Certification under Rule 23(b)(2) is appropriate because Defendants have acted or refused to act on grounds generally applicable to the class, making final injunctive and declaratory relief appropriate with respect to the class as a whole.

60. In the alternative, certification under Rule 23(b)(3) is appropriate because common questions predominate over individualized issues and a class action is superior to other available

methods for the fair and efficient adjudication of this controversy.

**FIRST CAUSE OF ACTION**
**Violations of the ADA, 42 U.S.C. § 12182 et seq.**

61. Plaintiff, Darren Cesario, on behalf of himself and the Class Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

62. Section 302(a) of Title III of the ADA, 42 U.S.C. § 12101 *et seq.,* provides:

> No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation.

42 U.S.C. § 12182(a).

63. Defendants own, lease, lease to, operate, control, and/or maintain a place of public accommodation and/or the goods, services, privileges, and advantages of a place of public accommodation through the Website.

64. Defendants have denied Plaintiff full and equal enjoyment of the goods, services, privileges, and advantages offered through the Website by failing to provide effective communication and equal access to blind users.

65. Defendants have failed to make reasonable modifications in policies, practices, or procedures and have failed to furnish appropriate auxiliary aids and services necessary to ensure that blind users are not excluded, denied services, segregated, or otherwise treated differently because of the absence of accessible Website design and coding.

66. Defendants' conduct constitutes unlawful discrimination under Title III of the ADA.

67. Plaintiff is entitled to injunctive and declaratory relief, attorneys' fees, costs, and such other relief as the Court deems just and proper.

**SECOND CAUSE OF ACTION**
**(New York State Human Rights Law)**
**("NYSHRL")**

68. Plaintiff, Darren Cesario, on behalf of himself and the Class and New York City Sub-Classes Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

69. At all times relevant to this action, the New York State Human Rights Law ("NYSHRL"), Article 15 of the New York Executive Law §§ 290 *et seq.*, covers the actions of the Defendants.

70. Plaintiff, at all times relevant to this action, as a result of his loss of vision, has a substantial impairment to a major life activity and is an individual with a disability under Article 15 of N.Y. Executive Law § 292(21).

71. Defendants, at all relevant times to this action, own and operate a place of public accommodation, the subject Website, within the meaning of Article 15 of N.Y. Executive Law § 292(9). Defendant is a "person" within the meaning of Article 15 of N.Y. Executive Law § 292(1).

72. Plaintiff has visited the Website www.davidstea.com on a number of occasions and has encountered barriers to his access that exist.

73. Under Article 15 N.Y. Executive Law § 296(2)(a) "it shall be an unlawful discriminatory practice for any person, being the owner, lessee, proprietor, manager, superintendent, agent or employee of any place of public accommodation ... because of the ... disability of any person, directly or indirectly, to refuse, withhold from or deny to such person any of the accommodations, advantages, facilities or privileges thereof."

74. Discrimination includes the refusal to adopt and implement reasonable modifications in policies, practices, or procedures when they are necessary to afford facilities,

privileges, advantages, or accommodations to individuals with disabilities. Article 15 of N.Y. Executive Law § 296(2)(a), § 296(2)(c)(i).

75. Defendant's actions violate Article 15 of N.Y. Exec. Law § 296(2)(a) by discriminating against the Plaintiff and Subclass by (i) owning and operating a website that is inaccessible to disabled individuals who are sight-impaired and cannot discern the content thereof without the use of a screen-reading program; (ii) by not removing access barriers to its Website in order to make accessibility features of the sites known to disabled individuals who are sight-impaired; and (iii) by refusing to modify the Website when such modifications are necessary to afford facilities, privileges, advantages or accommodations to individuals with disabilities. This inaccessibility denies disabled individuals who are sight-impaired full, and equal access to the facilities, goods, and services that the Defendant makes available to individuals who are not disabled and can see without the need of a screen-reading program or other similar device. Article 15 of N.Y. Exec. Law § 296(2)(c).

76. The Defendant's discriminatory practice also includes, "a refusal to take such steps as may be necessary to ensure that no individual with a disability is excluded or denied services because of the absence of auxiliary aids and services, unless such person can demonstrate that taking such steps would fundamentally alter the nature of the facility, privilege, advantage or accommodation being offered or would result in an undue burden." Article 15 of N.Y. Exec. Law § 296(2)(c).

77. Established guidelines exist for making websites accessible to disabled individuals. The International Website Standards Organization, the Worldwide Consortium, known throughout the world as "W3C," has published version 2.1 of the Web Content Accessibility Guidelines ("WCAG 2.1"). WCAG 2.1 is well-established guideline for making websites accessible to the blind and visually impaired people. These guidelines are universally followed by most large business entities and government agencies to ensure websites are accessible.

78. Defendant has intentionally and willfully discriminated against the Plaintiff and Subclass and violation of the New York State Human Rights Law, Article 15 of N.Y. Exec. Law § 296(2) and the discrimination continues to date.

79. Absent injunctive relief, Defendant's discrimination will continue against Plaintiff and Subclass, causing irreparable harm.

80. Plaintiff and the Subclass are therefore entitled to compensatory damages, civil penalties, and fines for every discriminatory act in addition to reasonable attorney fees and costs and disbursements of this action. Article 15 of N.Y. Exec. Law §§ 297(9), 297(4)(c) *et seq.*

**THIRD CAUSE OF ACTION**
**Violations of the New York State Civil Rights Law**

81. Plaintiff, Darren Cesario, on behalf of himself and the New York City Subclass Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

82. Plaintiff served notice thereof upon the New York State Attorney General, as required by N.Y. Civil Rights Law § 41.

83. Persons within New York State are entitled to full and equal accommodations, advantages, facilities, and privileges of places of public accommodations, resort or amusement, subject only to the conditions and limitations established by law and applicable alike to all persons. No person, being the owner of a place of public accommodation, shall directly or indirectly refuse, withhold from, or deny to any person any of the accommodations, advantages, facilities, and privileges thereof. N.Y. Civ. Rights Law § 40.

84. No person because of disability, as defined in § 292(21) of the Executive Law, shall be subjected to any discrimination in his or her civil rights by person or by any firm, corporation, or institution, or by the state or any agency or subdivision. N.Y. Civ. Rights Law ("NYCRL") § 40-c.

85. § 292 of Article 15 of the N.Y. Executive Law deems a disability a physical, mental,

or medical impairment resulting from anatomical, physiological, genetic, or neurological conditions that prevent the exercise of a normal bodily function. As such, the Plaintiff is disabled under the N.Y. Civil Rights Law.

86. Defendant discriminates against the Plaintiff and Subclass under NYCRL § 40 as Defendant's Website is a place of public accommodation that does not provide full and equal accommodation, advantages, facilities, and privileges to all persons and discriminates against disabled individuals who are sight impaired.

87. Defendant intentionally and willfully failed to remove the barriers on their Website, discriminating against the Plaintiff and Subclass preventing access in violation of NYCRL § 40.

88. Defendant has failed to take any steps to halt and correct its discriminatory conduct and discriminate against the Plaintiff and the Subclass members.

89. Under N.Y. Civil Rights Law § 41, "a corporation which violates any of the provisions of §§ 40, 40-a, 40-b or 42 shall be liable for a penalty of not less than one hundred dollars nor more than five hundred dollars, to be recovered by the person aggrieved thereby… in any court of competent jurisdiction in the county in which the plaintiff or defendants shall reside." *Id*...

90. Plaintiff and the SubClass hereby demand compensatory damages of five hundred dollars ($500.00) for the Defendant's acts of discrimination, including civil penalties and fines under N.Y. Civil Law § 40 *et seq.*

**FOURTH CAUSE OF ACTION**
**Violations of the New York City Human Rights Law**

91. Plaintiff Darren Cesario, on behalf of himself and the New York City Sub-Class Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

92. N.Y.C. Administrative Code § 8-107(4)(a) provides that "It shall be an unlawful discriminatory practice for any person who is the owner, franchisor, franchisee, lessor, lessee,

proprietor, manager, superintendent, agent or employee of any place or provider of public accommodation: [b]ecause of any person's . . . disability . . . directly or indirectly: [t]o refuse, withhold from or deny to such person the full and equal enjoyment, on equal terms and conditions, of any of the accommodations, advantages, services, facilities or privileges of the place or provider of public accommodation".

93. Defendant is subject to NYCHRL because it owns and operates the Website www.davidstea.com making it a "person" within the meaning of N.Y.C. Admin. Code § 8-102(1).

94. Defendant violates N.Y.C. Administrative Code § 8-107(4)(a) in refusing to update or remove access barriers to Defendant's Website, causing the Website and the services integrated completely inaccessible to the blind. This inaccessibility denies blind patrons full and equal access to the facilities, products, and services that Defendant makes available to the non-disabled public.

95. Defendant is required to "make reasonable accommodation to the needs of persons with disabilities . . . any person prohibited by the provisions of [§ 8-107 *et seq.*] from discriminating based on disability not to provide a reasonable accommodation to enable a person with a disability to satisfy the essential requisites of a job or enjoy the right or rights in question provided that the disability is known or should have been known by the covered entity." N.Y.C. Admin. Code § 8-107(15)(a).

96. Defendant's actions constitute willful intentional discrimination against the Sub-Class based on a disability in violation of the N.Y.C. Administrative Code § 8107(4)(a) and § 8-107(15)(a), in that Defendant has:

a. constructed and maintained a Website that is inaccessible to blind class members with knowledge of the discrimination; and/or

b. constructed and maintained a Website that is sufficiently intuitive and/or obvious that is inaccessible to blind class members; and/or

c. failed to take actions to correct these access barriers in the face of substantial harm and discrimination to blind class members.

97. Defendant has failed to take any prompt and equitable steps to remedy the discriminatory conduct as these violations are ongoing.

98. As such, Defendant discriminates and will continue in the future to discriminate against Plaintiff and other members of the proposed class and subclass based on disability in the full and equal enjoyment of the products, services, facilities, privileges, advantages, accommodations and/or opportunities of the Website under N.Y.C. Administrative Code § 8-107(4)(a). Unless the Court enjoins Defendant from continuing to engage in these unlawful practices, Plaintiff and members of the Class will continue to suffer irreparable harm.

99. Defendant's actions were to violate the NYCHRL, and therefore, Plaintiff invokes the right to injunctive relief to remedy the discrimination.

100. Plaintiff is also entitled to compensatory damages, as well as civil penalties and fines under N.Y.C. Administrative Code § 8-120(8) and § 8-126(a) for each offense as well as punitive damages pursuant to § 8-502.

101. Plaintiff is also entitled to reasonable attorneys' fees and costs.

102. Under N.Y.C. Administrative Code § 8-120 and § 8-126 and the remedies, procedures, and rights set forth and incorporated therein Plaintiff prays for judgment as set forth below.

## FIFTH CAUSE OF ACTION
**(Declaratory Relief)**

103. Plaintiff repeats and realleges the foregoing allegations as though fully set forth herein.

104. An actual controversy has arisen and now exists between the parties in that Plaintiff contends, and is informed and believes that Defendant denies, that the Website contains access

barriers denying blind customers the full and equal access to the products, services and facilities of the Website, which Defendant owns, operates and controls, fails to comply with applicable laws including, but not limited to, Title III of the Americans with Disabilities Act, 42 U.S.C. §§ 12182, *et seq.*, and N.Y.C. Admin. Code § 8-107, *et seq.*, prohibiting discrimination against the blind.

105. A judicial declaration is necessary and appropriate so that the parties may know their respective rights and obligations.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff respectfully requests that this Court grant the following relief:

a. A preliminary and permanent injunction to prohibit Defendant from violating the Americans with Disabilities Act, 42 U.S.C. §§ 12182, et seq., N.Y.C. Administrative Code § 8-107, et seq., and the laws of New York;

b. A preliminary and permanent injunction requiring Defendant to take all the steps necessary to make the Website fully compliant with the requirements set forth in the ADA, and the implementing regulations, so that the Website is readily accessible to and usable by blind individuals;

c. A declaration that Defendant owns, maintains and/or operates the Website in a manner that discriminates against the blind and which fails to provide access for persons with disabilities as required by Americans with Disabilities Act, 42 U.S.C. §§ 12182, et seq., N.Y.C. Administrative Code § 8-107, et seq., and the laws of New York;

d. An order certifying the Class and Sub-Classes under Fed. R. Civ. P. 23(a) & (b)(2) and/or (b)(3), appointing Plaintiff as Class Representative, and Plaintiff's attorneys as Class Counsel;

e. Compensatory damages in an amount to be determined by proof, including

all applicable statutory and punitive damages and fines, to Plaintiff and the proposed class and subclasses for violations of civil rights under New York City Human Rights Law, the New York State Human Rights Law and the New York State Civil Rights Law;

f. Pre-judgment and post-judgment interest;

g. An award of costs and expenses of this action together with reasonable attorneys' and expert fees; and

h. Such other and further relief as this Court deems just and proper.

**DEMAND FOR TRIAL BY JURY**

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff demands a trial by jury on all questions of fact the Complaint raises.

Dated: New York, New York
September 9, 2026

Respectfully submitted,

**JOSEPH & NORINSBERG, LLC**
*/s/ Robert Schonfeld*
Robert Schonfeld, Esq
*Attorneys for Plaintiff*
825 Third Avenue, Suite 2100
New York, New York 10022
Tel. No.: (212) 227-5700
Fax No.: (212) 656-1889
rschonfeld@employeejustice.com